# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

ANTHONY D. CARTER,

        Petitioner,     :      Case No. 2:20-cv-5792

  - vs -                                       District Judge James L. Graham
                                                    Magistrate Judge Michael R. Merz

WARDEN, Toledo
  Correctional Institution,

                                             :
        Respondent.

## REPORT AND RECOMMENDATIONS

This is an action for a writ of habeas corpus, brought *pro se* by Petitioner Anthony D. Carter under 28 U.S.C. § 2254.  The case is before the Court for decision on the Petition (ECF No. 3), the State Court Record (ECF No. 7), Respondent's Return of Writ (ECF No. 8), and Petitioner's Traverse (ECF No. 10).

**Litigation History**

On August 8, 2016, a Pickaway County Grand Jury indicted Carter and ten others on a 77-count indictment. (Indictment, State Court Record, ECF No. 7, Exhibit 1). Of the seventy-seven counts, Petitioner was indicted on twenty:  one count of engaging in a pattern of corrupt activity, one count of conspiracy to engaging in pattern of corrupt activity, eleven counts of trafficking in cocaine; five counts of trafficking in heroin; and two counts of conspiracy to felony trafficking in

1

cocaine. *Id.* A jury found him guilty on one count of engaging in a pattern of corrupt activity (Count One), seven counts of trafficking in cocaine (Counts 11, 12, 20, 35, 48, 64 and 65), and two counts of trafficking in heroin (Counts 36 and 49). He was sentenced to an aggregate term of imprisonment of thirty-one years.

Represented by new counsel, Carter appealed to the Ohio Fourth District Court of Appeals which affirmed the conviction and sentence. *State v. Carter*, 2018 Ohio 4503 (Ohio App. 4th Dist., Nov. 2, 2018)("*State v. Carter I*"). From the record it appears Carter never took a direct appeal to the Supreme Court of Ohio from this decision of the Fourth District.

On January 17, 2019, Carter filed *pro se* an Application to Reopen his direct appeal under Ohio R. App. P. 26(B)(Application, State Court Record, ECF No. 7, Ex. 12). Carter argued two omitted assignments of error: insufficiency of the evidence and lack of proof of venue. *Id.* The Fourth District rejected the first omitted assignment both on the merits and on the basis of *res judicata*; the second it rejected on the merits. (Entry, State Court Record, ECF No. 7, Ex. 13; not publicly reported)("*State v. Carter II*"), appellate jurisdiction declined, *State v. Carter*, 156 Ohio St. 3d 145 (2019). Carter filed two unsuccessful state habeas corpus petitions in the Ohio Sixth District Court of Appeals. He then filed the instant federal habeas petition pleading the following ground for relief:

> **Ground One**: The accumulation of errors in this case violated Petitioner right to due process and freedom from a wholly arbitrary deprivation of liberty. There is insufficient evidence to sustain this conviction.
>
> **Supporting Facts**: On or after march 17, 2016 a Pickaway County Grand Jury indicted Anthony D. Carter, hereafter Petitioner, on 21 out of 77 counts alleging O.R.C. 2923.32(A)(1) and 2925.03 violations.
>
> On July 6, 3017 after being transferred to the Pickaway County jail the Petitioner was served the 77 count indictment by the Pickaway County Sheriff's Department.

2

> The State presented three witnesses, two law enforcement officers and a co-defendant who had already pleaded guilty to various felonies and who was testifying against Petitioner as part of his negotiated plea. The State's entire case was based on the narrative of Anthony Schwelbauch Tr.p 298 Line 23-25, Tr.p 381 Lines 11-12, Tr.p 434 Lines 7-11, Tr.p 439 Lines 11-25 respectively, not based upon some objectively determinable evidence. Significantly, there was no illegal drugs seized Tr.p 318 Lines 18-25, Tr.p 319 Lines 1-8, Tr.p 310 Lines 7-19, Tr.p 312 Lines 8-10 respectively. Nor submitted for forensic testing as to authenticity and quantity. There was no "marked money" recovered and taken into evidence. There was no controlled "Buys" of contraband drugs Tr.p 315 Lines 14-16, Tr.p 317 Lines 5-10, Tr.p 483 Lines 7-20 respectively, as such would relate to Petitioner. As well as there was no offer to sell the controlled substances named in the indictment Tr.p 147 Lines 10-21, Tr.p 296 Lines 3-8, Tr.p 297 Lines 16-20, Tr.p 538 Lines 1-5, Tr.p 440 Lines 1-23, Tr.p 456 Lines 23-25, Tr.p 531 Lines 9-10 respectively.
>
> A verdict is void if its import is (by necessity) in doubt, or if it is unresponsive to the issues submitted to the jury.

(Petition, ECF No. 3, PageID 73, 86-87).

## Analysis

Petitioner's claim, as the Magistrate Judge reads it, is that he was convicted on insufficient evidence. He does not differentiate among the various counts of conviction, but attacks the sufficiency of the evidence as to all of them. He asserts that the State relied entirely on the testimony of Anthony Schwalbauch, a co-defendant in the case, which he challenges in various ways. He asserts that if the Schwalbauch testimony were excluded, there would be insufficient evidence to convict him.

On direct appeal Carter presented his objections to Schwalbauch's testimony as a claim of ineffective assistance of trial counsel against for not objecting to that testimony. He argued:

> trial counsel rendered ineffective assistance by failing to object to the testimony of Anthony Schwalbauch when he gave opinion

3

> testimony as to weights and measures of drugs and amounts, as well as opinions as to what the wiretap recorded speakers meant by their conversations, and that he was denied his rights to a fair trial, confrontation of witnesses, representation of counsel and due process as a result . . .

*State v. Carter I*, ¶ 1. The Fourth District overruled this Assignment of Error "[b]ecause we find the trial court properly admitted the lay witness testimony of Anthony Schwalbauch under Evid.R. 701, we cannot conclude Appellant's trial counsel's failure to object constituted deficient performance or that Appellant was prejudiced by the failure to object." *Id.* at ¶ 2. The Fourth District's full decision of the First Assignment of Error is as follows:

> [*P8] In his first assignment of error, Appellant contends he was denied the effective assistance of counsel, which resulted in a denial of his right to a fair trial, confrontation of witnesses, and due process of law. Appellant argues that his counsel's failure to object to his co-defendant's opinion testimony regarding weights, measures and amounts of drugs as referenced on various wiretap recordings, and interpretation of what the speakers meant when they used different code, or slang, words on the recordings, constituted deficient performance. Appellant questions whether his co-defendant should have been qualified as an expert witness, based upon his own drug use, before being permitted to testify as to these matters.
>
> [*P9] The State responds by noting that many courts in Ohio have allowed lay witnesses to testify, under Evid.R. 701, about the identity of a drug when a proper foundation has been laid regarding the lay witness's personal knowledge and experience. The State argues Appellant's co-defendant, Anthony Schwalbauch, clearly possessed sufficient personal knowledge and understanding of the drug trade to testify about common code words and measures as they relate to illicit substances. The State further argues that these particular matters fall outside the specialized, technical expertise contemplated under Evid.R. 702 for expert testimony, that Schwalbauch did not need to be qualified as an expert, and that he did not testify as an expert, but rather as a lay witness, whose testimony was properly admitted under the trial court's broad discretion and in full compliance with Evid.R. 701.
>
> [*P10] The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of

4

counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); accord *Hinton v. Alabama,* 571 U.S. 263, 134 S.Ct. 1081, 1087-1088, 188 L. Ed. 2d 1 (2014) (explaining that the Sixth Amendment right to counsel means "that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence").

 [*P11]  To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Strickland*, 466 U.S. at 687; *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 83; *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 85. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St. 3d 378, 389 N.E, 2000-Ohio-448, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

 [*P12]  The deficient performance part of an ineffectiveness claim "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky,* 559 U.S. 356, 366, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010); quoting *Strickland*, 466 U.S. at 688; accord *Hinton*, 134 S. Ct. at 1088. "Prevailing professional norms dictate that with regard to decisions pertaining to legal proceedings, 'a lawyer must have "full authority to manage the conduct of the trial."'" *Obermiller* at ¶ 85; quoting *State v. Pasqualone,* 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶ 24; quoting *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S.Ct. 646, 98 L. Ed. 2d 798 (1988). Furthermore, "'[i]n any case presenting an ineffectiveness claim, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."'" *Hinton*, 134 S. Ct. at 1088; quoting *Strickland*, 466 U.S. at 688. Accordingly, "[i]n order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95 (citations omitted); accord *Hinton*, 134 S. Ct. at 1088; citing *Padilla*, 559 U.S. at 366; *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 81.

[*P13] Moreover, when considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10; citing *State v. Smith*, 17 Ohio St.3d 98, 100, 17 Ohio B. 219, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth Amendment." *Strickland*, 466 U.S. at 687; e.g., *Obermiller* at ¶ 84; *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

[*P14] To establish prejudice, a defendant must demonstrate that a reasonable probability exists that "'but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the outcome.'" *Hinton*, 134 S. Ct. at 1089; quoting *Strickland*, 466 U.S. at 694; e.g., *State v. Short,* 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus (1989). "'[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Hinton*, 134 S. Ct. at 1089; quoting *Strickland*, 466 U.S. at 695. Furthermore, courts may not simply assume the existence of prejudice, but must require the defendant to affirmatively establish prejudice. *State v. Clark,* 4th Dist. Pike No. 02CA684, 2003-Ohio-1707, ¶ 22; *State v. Tucker,* 4th Dist. Ross No. 01CA2592, 2002-Ohio-1597. As we have repeatedly recognized, speculation is insufficient to demonstrate the prejudice component of an ineffective assistance of counsel claim. E.g., *State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 22; *State v. Simmons*, 4th Dist. Highland No. 13CA4, 2013-Ohio-2890, ¶ 25; *State v. Halley*, 4th Dist. Gallia No. 10CA13, 2012-Ohio-1625, ¶ 25; *State v. Leonard,* 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶ 68; accord *State v. Powell,* 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 86 (stating that an argument that is purely speculative cannot serve as the basis for an ineffectiveness claim).

[*P15]  Initially, we observe that "'[t]he failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *State v. Fears*, 86 Ohio St.3d 329, 347, 1999- Ohio 111, 715 N.E.2d 136 (1999); quoting *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988). A defendant must also show that he was materially prejudiced by the failure to object. *Holloway* at 244. Accord *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 233. Additionally, tactical decisions, such as whether and when to object, ordinarily do not give rise to a claim for ineffective assistance. *State v. Johnson,* 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 139-140.

[*P16]  As the court explained in *Johnson* at ¶ 139-140:

> "[F]ailure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel. To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness. *State v. Holloway* (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831. * * * [E]xperienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice. *Lundgren v. Mitchell* (C.A.6, 2006), 440 F.3d 754, 774. Accord *State v. Campbell,* 69 Ohio St.3d 38, 52-53, 1994-Ohio-492, 630, 630 N.E.2d 339."

[*P17]  Here, Appellant contends his counsel was ineffective for failing to object to the following trial testimony from his co-defendant, Anthony Schwalbauch:
1. Testimony that "brown girl" meant heroin;
2. Testimony that "...one and a half, maybe two" actually meant two ounces, not grams, and was in reference to crack cocaine;
3. Testimony that a "mule" was a female who was used to transport drugs "shoved up inside her, and concealed so it would not be detected[;]"

7

4. Testimony which provided an estimate of how much an ounce and a half of crack cocaine would cost Alan Crosby, either $1,800.00 or $1,900.00;
5. Testimony regarding a prior deal for two ounces for $2,400.00 and that it took a day and a half to get rid of an ounce of crack;
6. Testimony which interpreted a telephone conversation between Crosby and Tommy Barker in which Barker asks if Crosby has any "boy" and explained that "boy" really means heroin;
7. Testimony which interpreted a telephone conversation between Crosby and another person in which the caller referenced a "...car that was half a gram" and explained that it denoted heroin; and
8. Testimony on cross-examination and re-cross that "girl" or "hard" meant crack cocaine.

[*P18]  Appellant also argues Schwalbauch was improperly permitted to testify about what other people, such as Crosby's wife Rhonda and Crosby's family in general, knew. Appellant cites to a call between Crosby and his wife, noted as number 8619 in the trial transcript, in which Crosby's wife is complaining about Crosby sitting in a car and waiting for over three hours to purchase crack cocaine. When asked whether Crosby's wife knew that Crosby was there to purchase crack cocaine, Schwalbauch testified she did, and that the whole family knew.

[*P19]  Finally, Appellant argues Schwalbauch should not have been permitted to testify regarding what the phrase "talking a lot" meant when it was used during a recorded telephone conversation between Appellant and Crosby. The trial transcript indicates the following recorded conversation between Alan Crosby and Appellant was played for the jury:

> "Anthony Carter: Hey, that's cool!
> Leslie Crosby: Cause that's the price you asked, right? A half, point six. You know, that's $2,600 for two, $1,300 and $1,325 is $2,650, I'm giving you $1,950 so that's one and a half, right?
> Anthony Carter: Yeah!
> Leslie Crosby: Is that right?
> Anthony Carter: Sounds like I aunt' even doing the math.
> Leslie Crosby: Well, do it Bubba! I'm not cheating you. I'm giving you $1,325 an ounce, that's one and a half at $1,950.
> Anthony Carter: Yeah, you're talking a lot. You hear me.
> Leslie Crosby: Okay. Okay. You're right. I'm sorry. I'll see you when you get there bro! Bye!"

Anthony Schwalbauch then testified as follows in order to interpret the call:
"Q: Okay. Then they said something, Carter says you're talking a lot, you hear me, and Leslie apologizes. Do you remember that?
A: Yes.
Q: Why would he have said something like that?
A: Sometimes because you think you're being recorded, to use code words instead.
Q: Was that a concern that Alan had then?
A: Always.
Q: Was that just a general concern in the drug world?
A: Always.
Q: Did you do that on your personal phone?
A: Yeah.
Q: Did you ever talk in ounces and grams about heroin or crack cocaine?
A: No.
Q: You always use what?
A: Code words."

[*P20]  Thus, in summary, Appellant argues his trial counsel should have objected to various statements made by his co-defendant which interpreted code words or slang words used in the drug trade, and which explained the significance of references made by Appellant and Crosby to the price being paid for requested amounts, to the extent the testimony served to identify the drug at issue and the weight or amount of the drug, based upon the language used in the recorded telephone conversations. Appellant also argues Schwalbauch should not have been permitted to testify regarding what Crosby's wife and family "knew" regarding the activities of Crosby or the drug operation in general. Appellant contends his co-defendant should have been qualified as an expert pursuant to Evid.R. 702 before being permitted to testify on these matters and that his counsel's failure to object to the testimony constituted deficient performance. Appellant suggests the failure to object to Schwalbauch's testimony was especially prejudicial, in light of the fact that no drugs were recovered from any of the transactions.

[*P21]   Evid.R. 701 governs opinion testimony by lay witnesses and provides as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a

9

> clear understanding of the witness' testimony or the determination of a fact in issue.

Conversely, Evid.R. 702 governs testimony by experts and provides as follows:

> "A witness may testify as an expert if all of the following apply:
>
> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
> (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
> (2) The design of the procedure, test, or experiment reliably implements the theory;
> (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

[*P22] Contrary to Appellant's argument, and as correctly noted by the State, since the adoption of the Rules of Evidence, both at the state and federal levels, many courts have used an Evid.R. 701 analysis and have allowed lay witnesses to testify about the identity of a drug. State v. Johnson, 4th Dist. Gallia No. 13CA16, 2014-Ohio-4032, ¶ 38; citing State v. McKee, 91 Ohio St.3d 292, 2001-Ohio-41, 744 N.E.2d 737. As this Court noted in *Johnson*:

> "[C]ourts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702.... Although these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they will fall within the ambit of the rules requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue. These cases are not based on specialized knowledge within the scope of Evid. R. 702,

10

> but rather are based upon a layperson's personal knowledge and experience."

*Johnson* at ¶ 38.

The Supreme Court of Ohio held, in *McKee*, that the "experience and knowledge of a drug user lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established." *McKee*, 91 Ohio St.3d at 297; see also *State v. Johnson* at ¶ 39 (allowing lay testimony of the defendant as opinion testimony to identify a hydrocodone pill based upon the fact that the defendant had had a prior prescription for hydrocodone and recognized the pill from her previous experience.); *State v. Jewett*, 4th Dist. Scioto No. 15CA3714, 2017-Ohio-2891, ¶ 34.

[*P23] Further, although lay witness testimony regarding the identity of a drug was permitted based upon the witnesses' visual identification of the drug in *Johnson*, lay witness testimony has also been permitted in order to interpret code, or slang, terms used in the drug trade, which serve to provide identification of drugs by name, amount and price, as heard on recorded telephone conversations. See *State v. Davis,* 2017-Ohio-495, 85 N.E.3d 136, ¶ 30-31 (12th Dist.) (lay witness testified that slang or jargon was [**19] usually used to set up drug deals and that saying "I need a three or a four" means $30 or $40 in reference to crack cocaine, and that one would not actually refer to crack cocaine in case law enforcement had the phone tapped.) In *Davis*, a proper foundation was laid through testimony that the lay witness at issue had been purchasing crack cocaine, directly or indirectly, from Davis for approximately eight years and was a daily user of crack cocaine. *Id*. Additionally, the *Davis* court permitted the State to present evidence through a lay witness that the phrase "checking on ole girl" reflected a slang term for cocaine. *Id*. at ¶ 39 (also permitting lay witness testimony that recorded conversations indicating Davis stated "one of 'em" in response to being quoted a price of "12, 5" referred to the fact that $1,250 was the standard price for the purchase of one ounce of cocaine, which amounts to 28 grams of cocaine.). Moreover, much like the case presently before us, the State did not introduce the drugs into evidence in Davis, but rather proved its case through circumstantial evidence in the form of voluminous records of calls between Davis and his associates. *Id*. at ¶ 35.

[*P24] Further, and importantly, this Court has previously noted that:

11

> "* * * in offenses where the state fails to recover and weigh the drugs, the offender may be convicted of the offense and the penalty enhancement associated with the weight of the drug involved based on the testimony of lay witnesses, even in the absence of expert testimony, as long as a proper foundation is made."

*Jewett, supra*, at ¶ 35; citing *Garr v. Warden, Madison Corr. Inst.*, 126 Ohio St.3d 334, 2010-Ohio-2449, 933 N.E.2d 1063, ¶ 28 (conviction for trafficking in cocaine with major-drug-offender specification can be supported by lay testimony where no drug is recovered and no testing is performed).

Similarly, in *State v. Rardon*, 2018-Ohio-1935, __ N.E.3d __ (5th Dist.), the trial court permitted lay witness testimony from the defendant's business associate, based upon his experience using steroids in the past. *Id.* at ¶ 5. The witness provided testimony that the term "gear" was "just a short-term for steroids where if you're talking in public, you don't want people to, . . . understand what you're talking about with steroids, so you say gear." *Id.* at ¶ 58. This testimony was important as the term gear was used in text messages taken from the defendant's phone. *Id.* at ¶ 58.

[*P25] The record indicates that Anthony Schwalbauch was Appellant's co-defendant and the son-in-law of Leslie Alan Crosby, the apparent ring-leader of the drug operation. The investigation of Crosby led authorities to Appellant as a suspected supplier to Crosby. Schwalbauch served as a runner and "drug tester" of the operation. He tested the drugs supplied to the operation by using the substance being purchased to be sure it was of good quality, and was what it purported to be. For instance, the jury heard testimony about a meeting between Appellant, Crosby and Schwalbauch at the Buffalo Wild Wings restaurant in Circleville, Ohio, and also saw photographic evidence indicating Schwalbauch purchased crack cocaine from Appellant and tested it for quality, as part of his role in the drug operation.

[*P26] Schwalbauch testified regarding his experience using drugs and the difference between the high resulting from heroin use versus cocaine use. Thus, it appears Schwalbauch was intimately involved in the drug operation and had the experience necessary to establish a foundation for his testimony. As such, having laid a proper foundation, the State was permitted to introduce further testimony from Schwalbauch as a lay witness to the extent that his testimony dealt with issues outside the realm of common knowledge, was rationally based on firsthand observations and helpful in

determining a fact in issue. His testimony aided the jury in interpreting the voluminous recordings of telephone conversations involving Appellant, Crosby and others that all occurred as part of the drug operation.

[*P27] After our review of the record and consideration of the applicable rules of evidence and above-cited case law, we do not believe that Appellant has shown that trial counsel's failure to object to the eight examples of Schwalbauch's testimony listed above substantially violated any of counsel's essential duties to Appellant or that counsel's failure to object materially prejudiced Appellant's case. Further, and importantly, a review of the trial transcript reveals that Special Agent Shawn Rowley provided testimony on many of the same issues as Schwalbauch. For instance, Rowley testified regarding code words for quantities of drugs and what "boy" and "girl" referenced in terms of drugs, and also what the term "mule" meant. He also identified the voices of Crosby and Appellant on the recorded calls that were played for the jury. Appellant made no objection below and raises no argument on appeal regarding Rowley's testimony admitted at trial.

[*P28] With regard to Appellant's argument his trial counsel should have objected to Schwalbauch's testimony regarding what Crosby's wife and family "knew" about his activities, assuming *arguendo* it was error for the trial court to permit Schwalbauch to testify regarding someone else's knowledge or understanding and that counsel should have lodged an objection, we find any error to be harmless in light of the Schwalbauch's other testimony we have found permissible. Finally, with regard to Appellant's argument that there should have been an objection made to Schwalbauch's testimony regarding what Appellant meant when he told Crosby he "was talking a lot," this testimony is very similar to testimony allowed in both State v. Davis and State v. Rardon, supra. Davis at ¶ 30 (permitting lay testimony explaining that slang terms and jargon was typically used when setting up drug deals and also permitting lay witness testimony to interpret jargon used in reference to weight and price for crack cocaine); Rardon at ¶ 58. As such, we find it permissible here, and not in violation of Evid.R. 701.

[*P29] As a result, because we cannot conclude that trial counsel's failure to object constituted deficient performance, we find no merit to Appellant's first assignment of error. Accordingly, Appellant's first assignment of error is overruled.

*State v. Carter I.*

To summarize, the Fourth District applied the governing federal standard for ineffective assistance of counsel adopted in *Strickland v. Washington,* 466 U.S. 668 (1984). Because Schwalbauch was a competent witness on the subjects on which he testified, the objection Carter believes should have been made would have been meritless. It cannot be ineffective assistance of trial counsel to fail to make a meritless objection.

As the Fourth District's decision shows, Carter did not claim on direct appeal that there was insufficient evidence to convict. He asserts in the Petition that he attempted to file a *pro se* brief on direct appeal which would have raised this issue, but the brief was stricken because Ohio does not permit hybrid representation where a party appears both by counsel and *pro se*. To get that issue before the Court of Appeals, he claimed in his 26(B) Application that it was ineffective assistance of appellate counsel not to raise this claim.

In *State v. Carter II* the Fourth District again applied the correct federal standard from *Strickland;* that standard is equally applicable to ineffective assistance of appellate counsel claims. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). It noted that Carter's insufficient evidence claim was based on the underlying claim that Schwalbauch's testimony should have been excluded. Because appellate counsel had made that argument as a predicate to the ineffective assistance of trial counsel claim, appellate counsel was not ineffective in challenging the Schwalbauch testimony in the way he did. *Id.* at ¶ 8. It also concluded that *res judicata* interests cut in the same direction. *Id.* at ¶ 9. In other words, if Schwalbauch's testimony was necessary to the State's case, excluding it was necessary to Carter's insufficient evidence claim and the Fourth District had already decided that it was properly admitted. Because the Fourth District captioned its decision on Carter's first omitted assignment of error as a decision on "insufficient evidence," this Court will treat that decision as a merits decision on the insufficient

14

evidence claim.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most

15

> favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

With that general law set out, the Magistrate Judge will proceed through the Traverse and respond to individual points made by Petitioner.

At PageID 990, Petitioner seems to be making the point that crimes in Ohio must be defined by statute. To put it another way, there are no common-law crimes in Ohio, a proposition adopted by the Ohio courts continuously since statehood in 1803. *Mitchell v. State*, 42 Ohio St. 383 (1884), *citing Key v. Vattier*, 1 Ohio 132, 144 (1823); *Winn v. State,* 10 Ohio 345 (1841); *Vanvalkenburgh v. State*, 11 Ohio 404 (1842); *Allen v. State,* 10 Ohio St. 287, 301(1859); *Smith v. State*, 12 Ohio St. 466, 469 (1861); *Knapp v. Thomas*, 39 Ohio St. 377, 385 (1883). However, all of the crimes

of which Carter was convicted and for which he was sentenced are defined by the statutes referenced in the Indictment.

Later on the same page, Carter says that a sentence unauthorized by law may be attacked at any time and *res judicata* does not apply, citing *State v. Fischer*, 128 Ohio St. 3d 92, ¶ 26 (2010)[1]. In *Fischer* the Supreme Court of Ohio held "[w]hen a judge fails to impose statutorily mandated postrelease control as part of a defendant's sentence, that part of the sentence is void and must be set aside. *Id.* at ¶ 26.

> "A motion to correct an illegal sentence 'presupposes a valid conviction and may not, therefore, be used to challenge alleged errors in proceedings that occur prior to the imposition of sentence.' " *Edwards v. State* (1996), 112 Nev. 704, 708, 918 P.2d 321, quoting *Allen v. United States* (D.C.1985), 495 A.2d 1145, 1149. It is, however, an appropriate vehicle for raising the claim that a sentence is facially illegal at any time. *Id*. The scope of relief based on a rule, like Fed.R.Crim.P. 35, is likewise constrained to the narrow function of correcting only the illegal sentence. It does not permit reexamination of all perceived errors at trial or in other proceedings prior to sentencing. See, e.g., *Hill v. United States* (1968), 368 U.S. 424, 430, 82 S.Ct. 468, 7 L.Ed.2d 417.

*Id.* at ¶ 25, quoted in *State v. Harris*, 132 Ohio St. 3d 318, ¶ 17 (2012). However, Supreme Court of Ohio precedent on when a defendant can raise a claim that a sentence is void does not control the jurisdiction of United States District Courts in habeas corpus. No Ohio court has held that Carter's sentence is void, nor has he ever filed a motion to vacate a void sentence in the Ohio courts.

Carter next argues that a proper foundation must be laid for introducing a witness's testimony and the witness must testify from first-hand knowledge (Traverse, ECF No. 10, PageID 990-91). Those requirements are laid down in the Ohio Rules of Evidence. The question of

---

[1] Carter incorrectly cites this case as *State v. Fisher*, 124 Ohio St. 3d 92.

whether the State has complied with those Rules is a question of state law on which a habeas court is bound by the state court's decision. *Bradshaw v. Richey*, 546 U.S. 74 (2005). The Fourth District held Schwalbauch's testimony was admissible and overruled the assignment of error that it was ineffective assistance of trial counsel not to object.

Carter next claims the trial court lacked jurisdiction (Traverse, ECF No. 10, PageID 991). Common Pleas courts in Ohio are courts of general jurisdiction which have subject matter jurisdiction of all felony cases within their county once an indictment is returned.

Carter next claims the State did not meet "statutory requirements" in convicting him and this is a violation of the Due Process, Equal Protection, and Cruel and Unusual Punishment Clauses. *Id.* at PageID 993. This claim was not raised in the state courts and is thus procedurally defaulted. It was not raised in the Petition and cannot be added in the Traverse. *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), *citing Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). And it is also without merit. "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993).

Carter claims the First Amendment right to association protects his right not to be arrested for associating even with known criminals (Traverse, ECF No. 10, PageID 994). No First Amendment claim was made in the state courts or the Petition. And while the First Amendment protects freedom of association, it does not protect associating and conspiring to commit crimes. For example, while businessmen may associate for the purpose of advancing their joint interests, if they conspire to fix prices in violation of the Sherman Act, the First Amendment will not protect them from imprisonment, which happened to executives of General Electric in the early 1960's. Lastly, Carter asserts a miscarriage of justice will result from enforcing any procedural default

18

against him in this case (Traverse, ECF No. 10, PageID 994). While the Supreme Court recognizes a miscarriage of justice excuse for procedural default, that excuse is limited to cases in which a habeas petitioner produces new evidence of actual innocence. *Calderon v. Thompson*, 523 U.S. 538, 557-58 (1998) (holding that "avoiding a miscarriage of justice as defined by our habeas corpus jurisprudence" requires "a strong showing of actual innocence"); see *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

March 30, 2021.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such

objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #